UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MADELINE DEL CARMEN VARGAS,

                Plaintiff,

              - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4363 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Madeline Del Carmen Vargas brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 23, 24, 26.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff has suffered from chronic lower back pain since at least October 2015. (Tr. 159.[1]) In December 2015, Plaintiff began treatment with Dr. Jamie Nieto, a neurosurgery specialist, who diagnosed intervertebral disc disorder. (Tr. 917.) Following the diagnosis, Plaintiff began discussing surgery with Drs. David Rosen and Cesar Lassalle. (Tr. 496–498, 630–695.) Meanwhile, Plaintiff was working in the restaurant industry, as a cook helper and fast-food cook, until she stopped working due to back pain around January 2017. (*See* Tr. 166, 311.) On January

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript

1

3, 2017, Plaintiff protectively filed for DIB and SSI, claiming an amended onset date of February 1, 2017,[2] due to degenerative disc disease, herniated discs lumbar spine, lumbar radiculopathy, obesity, depression, left hip degenerative joint disease. (Tr. 154, 157.)

On February 1, 2017, following successful trials with a temporary spinal cord stimulator, Plaintiff underwent surgery with Dr. Rosen for the placement of a permanent spinal cord stimulator. (Tr. 66, 580–81.) Following the surgery, Plaintiff experienced some reduction in pain; however, in April, Plaintiff reported left-sided lower extremity numbness to Dr. Lassalle. (Tr. 570.) A CT scan revealed moderate to severe central canal stenosis and moderate bilateral neural foraminal narrowing.[3] (Tr. 570–575.) Plaintiff was prescribed Methocarbamol and Hydrocodone for the pain by Dr. Lourdes Varela-Batista. (Tr. 644–45.) Plaintiff did not return to work following the surgery and subsequently lost her job. (*See* Tr. 66, 311.) On April 19, 2017, Plaintiff's claims for benefits were initially denied. (Tr. 154.)

In May 2017, Plaintiff began treatment at Park Place Behavioral Health Care with Martha Bozeman, a license clinical social worker ("LCSW"). (Tr. 589–610.) Plaintiff reported feeling frequently depressed and anxious given the years of pain and the financial difficulties caused by attending to her pain. (Tr. 594.) Additionally, Plaintiff reported that her recent surgery concerned her given the frequent leg numbness. (*Id.*) Plaintiff's depressive symptoms included depressed mood, diminished interest, insomnia, fatigue, poor appetite, poor concentration, irritability,

---

[2] Plaintiff originally alleged an onset date of October 7, 2015. (Tr. 66.).

[3] "Bilateral foraminal stenosis details when the spinal nerve root is compressed on both sides due to narrowing of the foramen that may be caused by an enlarged joint, a collapsed disc space or a foraminal herniated disc." Spine-Health, *Bilateral Foraminal Stenosis Definition*, https://www.spine-health.com/glossary/bilateral-foraminal-stenosis#:~:text=Bilateral%20foraminal%20stenosis%20details%20when,or%20a%20foraminal%20herniated%20disc (last visited Feb. 15, 2022).

anxiety, preoccupation, guilt, hopelessness, crying spells, low energy levels, and isolating behaviors.  (Tr. 594–96.)  Anxiety and manic symptoms were also reported, including mood swings, racing thoughts, distractibility, impulsivity, and excess worry with a history of sexual abuse and trauma.  (*Id.*)  Plaintiff was diagnosed with generalized anxiety disorder, and unspecified depressive disorder/major depressive disorder, recurrent episode.  (Tr. 599.)  LCSW Bozeman gave Plaintiff a Global Assessment of Function ("GAF") score of 47, which indicates serious symptoms or impairments.[4]  (*Id.*)  That diagnosis was later revised to bipolar disorder unspecified and general anxiety disorder, and Plaintiff was prescribed Risperidone and Vistaril.  (Tr. 607–08.)

Between April 2017 and early July 2017, three non-examining medical experts provided an opinion on Plaintiff's physical and mental impairments.  On April 18, 2017, Dr. Lawrence Solberg provided an opinion on Plaintiff's physical impairment, finding that Plaintiff was capable of engaging in a range of light work.  (Tr. 109–116.)  On June 28, 2017, Dr. Wendy Silver found that Plaintiff had no to mild limitations due to her mental impairments.  (Tr. 128.)  Finally, on July 5, 2017, Dr. Ronald Machado concluded that Plaintiff's physical impairments did not significantly limit her ability to work.  (Tr. 131–32.)  On July 6, 2017, Plaintiff's benefits were again denied following reconsideration.  (Tr. 154.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)

Through the same period, Plaintiff reported worsening leg numbness and began using a cane.  (Tr. 582, 619–23, 625.)  Drs. Rosen and Lassalle began discussing removing the spinal cord stimulator given the leg numbness.  (Tr. 584, 622.)  In September 2017, Plaintiff reported that she

---

[4] A GAF score of between 41 and 50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  *Zabala v. Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed. rev. 2000)).

no longer felt any significant pain relief from the stimulator and that the numbness had become severe.  (Tr. 73–74, 625.)  And, in November 2017, the stimulator was removed.  (Tr. 25, 919, 957.)  Following the removal of the stimulator, Plaintiff's pain became severe, causing her to visit the emergency room five times in 2018.  (Tr. 63.)  In addition to the emergency room visits, Plaintiff continued treatment with several physicians and mental health experts.

Plaintiff continued to see Dr. Nieto up until the ALJ hearing, and received several physical examinations, reporting high levels of lumbar and thoracic spine pain.  (Tr. 900–12.)  Dr. Nieto diagnosed Plaintiff with low back and thoracic pain and displacement of lumbar intervertebral disc without myelopathy.  (Tr. 909–14.)  Dr. Nieto observed "a lot of thoracic pain where the stimulator leads were implanted."  (Tr. 901, 914.)  On October 1, 2018, Dr. Nieto performed a L4-5 left hemilaminectomy, medial facetectomy, and excision of a herniated disc.  (Tr. 697–98.)  During a physical therapy follow-up, it was noted that Plaintiff was "at least 80% but [less than] 100% impaired, limited or restricted."  (Tr. 950.)

Plaintiff also saw Dr. Bieber for her post-stimulator removal pain.  Plaintiff reported pain and difficulty walking, standing, and lying down.  (Tr. 957–58.)  Dr. Bieber noted on several occasions that Plaintiff was using a cane to walk and was limping.  (Tr. 19, 25, 31, 935–37, 957.)  Dr. Bieber ordered MRI and x-ray imaging of Plaintiff, finding that Plaintiff now had left quadriceps muscle atrophy, along with several issues with the L2-3, L3-4, and L5-S1 discs and L3 and L4 nerve roots.  (Tr. 22, 34, 40, 919–924.)  Dr. Bieber diagnosed lumbar radiculopathy and a herniated disc and prescribed Tramadol.  (Tr. 929, 961.)

Plaintiff also met with Dr. Loveena Singh on several occasions due to frustrations with pain management and her feelings of isolation.  (Tr. 791.)  Plaintiff noted her willingness to try a new pain management regiment and reported her pain at 10/10.  (Tr. 794.)  Dr. Singh twice

diagnosed Plaintiff with unspecified thoracic, thoracolumbar and lumbosacral intervertebral disc disorder, major depressive disorder, recurrent and severe without psychotic features, and obesity. (Tr. 792–96.)

Plaintiff continued her mental health treatment at New York Psychotherapy and began regularly seeing Christopher Rodriguez, MSW, from January 2019 until the ALJ hearing.  (Tr. 741–72.)  Plaintiff consistently reported anxiety and depression due to her back pain, increased feelings of isolation, crying spells, loss of interest, irritability, anger, and worry over financial matters.  (Tr. 734, 739–43, 746, 758–59.)  Plaintiff noted difficulties coping with the stress and anxiety, reporting that her anxiety caused rapid heartbeats, frequent sweating, racing thoughts and shortness of breath.  (Tr. 746.)  Examiners noted that Plaintiff had fair to poor recent and remote memory and was easily distracted.  (Tr. 735.)  Plaintiff was diagnosed with major depressive disorders, recurrent and moderate.  (Tr. 733–35, 765–66.)  Plaintiff testified at the ALJ hearing that she began taking Buspirone, Paroxetine, and Trazodone approximately one month before the hearing.  (Tr. 77.)

On March 21, 2019, Ms. Carena Walcott, Pediatric Nurse Practitioner–Board Certified ("PNP-BC" or "NP"), provided an opinion on Plaintiff's work-related functional capacity.  (Tr. 785–790.)  NP Walcott was associated with All Care Family Medicine, the facility where Plaintiff had been seeing Dr. Singh, and indicated she had seen Plaintiff eight times from March 16, 2018 to March 15, 2019.  (Tr. 163, 785.)  NP Walcott opined that Plaintiff could sit for a total of 2 hours and stand/walk for only 1 hour in an 8-hour day.  (Tr. 788.)  NP Walcott could not provide an estimate for the likely time-off Plaintiff would need as a result of her impairments and estimated she would have approximately 15% off-task time during a typical workday.  (Tr. 789.)

On April 3, 2019, Plaintiff appeared with her attorney Mark Keller for a hearing before ALJ Michelle Allen.  (Tr. 59–98.)  During the hearing, the ALJ questioned vocational expert ("VE") Mitchell Schmidt.  (Tr. 84–98.)  By decision dated July 12, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2017, her alleged onset date, through the date of the ALJ's decision.  (Tr. 151–68.)  Plaintiff requested a review of the ALJ's decision, which was denied by the Appeals Council on July 23, 2020.  (Tr. 1–3.)  Thereafter, Plaintiff timely commenced this action.[5]

## II.     The ALJ's Decision

In evaluating disability claims, an ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."   20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limit[s] [the

---

[5] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [she] was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued July 23, 2020 (Tr. 1), and the Complaint was filed on September 17, 2020 (Complaint, Dkt. 1), 52 days after the presumed receipt date of the decision, rendering this appeal timely.

plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a).   If the impairment is not severe, then the plaintiff is not disabled.[6]   *Id.* § 416.920(a)(4)(ii).   But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").   *Id.* § 404.1520(a)(4)(iii); *see also Id.* pt. 404, subpt. P, app. 1.   If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.   *Id.* § 404.1520(a)(4)(iii).   On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.   To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1).   The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.   *Id.* § 404.1520(a)(4)(iv).   If the answer is yes, the plaintiff is not disabled.   *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v).   If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits.   *Id.*

---

[6] In cases involving mental health, such as this one, a mental health impairment is severe when the Plaintiff has either one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.   20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04(B).   An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.   *Id.*   A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.   *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2017.  (Tr. 157.)  At step two, the ALJ determined that Plaintiff had the "following severe impairments: degenerative disc disease, herniated discs lumbar spine, lumbar radiculopathy, obesity, depression, left hip degenerative joint disease."  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings.  (Tr. 157–58.)  The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work[7] as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can never climb ramps, stairs, ladders, ropes, or scaffolds.  She is able to frequently balance with the use of an assistive device.  She can stoop and crouch occasionally, but never kneel or crawl.  She cannot work at unprotected heights or with moving mechanical parts, and she can never operate a motor vehicle.  She is able to perform simple, routine tasks and frequently interact with supervisors and co-workers and occasionally with the public.  She must use an assistive device to ambulate.

(Tr. 158–59.)  At step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a cook helper nor fast-food cook.  (Tr. 166.)  Finally, at step five, the ALJ found that there were other jobs Plaintiff could perform, such as addresser, nut sorter, and cuff folder, that exist in significant numbers of in the economy.  (Tr. 167.)  The ALJ thus concluded that the Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 CFR 404.1567(a).

whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 24-4, at 2.) For the reasons set forth below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record, violated the treating physician rule,[8] and provided an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28,

---

[8] Although recently adopted legislation has removed the "treating physician rule" requirement, the rule still applies to claims filed with the SSA prior to March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, *5867-68 (Jan. 18, 2017).

2017) (remanding after court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence); *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987) (remanding so that ALJ could properly comply with the treating physician rule). Additionally, on remand, the ALJ should further explain her credibility determinations, including her reliance on evidence of daily functioning and lack of psychiatric hospitalization. *Hodge v. Comm'r of Soc. Sec.*, No. 20-CV-769 (AMD), 2020 WL 7262846, at *4 (E.D.N.Y. Dec. 10, 2020) ("On remand, the ALJ should also include a specific credibility determination, explain how she balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and the rest of the record.").

## I.      Failure to Develop the Record and Violation of the Treating Physician Rule

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well-established in this Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Furthermore, even though Plaintiff even did not raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop

the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Here, the ALJ's failure to obtain a medical opinion from any of Plaintiff's treating physicians requires remanding for further development of the record. An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts*, 94 F.3d at 37; *see* 20 C.F.R. § 416.912(b)(1). As part of that obligation, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians. *Romero v. Comm'r of Soc. Sec.*, No. 18-CV-10248 (KHP), 2020 WL 3412936, at *13 (S.D.N.Y. June 22, 2020) (collecting cases). To fulfill that obligation, an ALJ must make an initial request for medical opinions and, if no opinion is received, make a follow-up request between 10 and 20 days after the initial request. *Prieto*, 2021 WL 3475625 at *10; 20 C.F.R § 404.1512(b)(1)(i). Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity. *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.").

The ALJ considered several medical opinions in her decision, but none from Plaintiff's treating physicians. (Tr. 165–66.) Three of the opinions considered—those of Drs. Solberg, Machado, and Silver—were from non-examining SSA consultants. (*Id.*) The ALJ also considered the opinion of NP Walcott, giving it limited weight (*id.*), but, as an NP, Walcott did not qualify as an "acceptable medical source" or a "treating physician." *Puckett v. Berryhill*, No. 17-CV-5392 (GBD) (KHP), 2018 WL 6625095, at *14 (S.D.N.Y. July 13, 2018); 20 C.F.R. § 404.1502(a)(7). That is true even though NP Walcott was board-certified. *See Mathew F. v. Comm'r of Soc. Sec.*,

No. 20-CV-1197 (FPG), 2022 WL 202773 (W.D.N.Y. Jan. 24, 2022)  The ALJ considered the

GAF score provided by LCSW Bozeman (Tr. 589–610), but GAF scores qualify as medical

opinions only if provided by an "acceptable medical source," *Mitchell v. Colvin*, No. 14-CV-4154,

2015 WL 5306208, at *12 (S.D.N.Y. Sept. 10, 2015), and, as an LCSW, Bozeman was not an

"acceptable medical source," nor a "treating physician," for that matter, *Kristina T. v. Comm'r of

Soc. Sec. Admin.*, No. 19-CV-135 (MAD), 2019 WL 5425261, at *5 (N.D.N.Y. Oct. 23, 2019).

The ALJ also considered a recommendation by Dr. Ranjini Patton, an emergency room physician,

that Plaintiff should not work for a period of two days given pain symptoms in January 2017.  (Tr.

509.)  Although the ALJ treated Dr. Patton's recommendation as an opinion, it does not come close

to qualifying as a "medical opinion" under 20 C.F.R. § 404.1527(a)(1).[9]  Regardless, Dr. Patton

was not one of Plaintiff's treating physicians.  The record indicates that Dr. Patton treated Plaintiff

only once, in the emergency room (Tr. 501–09), and a treating physician is defined as someone

who "has or [] had an ongoing treatment and physician-patient relationship with the individual."

*Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010).

Indeed, the record contains no medical opinions from any of Plaintiff's numerous treating

physicians, including Drs. Nieto, Bieber, Rosen, and Singh.[10]  Additionally, the record does not

reveal any attempt by the ALJ to obtain medical opinions from those sources, and this alone is a

---

[9] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).

[10] The ALJ also did not obtain an opinion from MSW Rodriguez, who treated claimant regularly.  While, as an MSW, Rodriguez did not qualify as a "treating source" prior to March 27, 2017, *Delgado v. Berryhill*, No. 17-CV-54 (JCH), 2018 WL 1316198, at *3 n.2 (D. Conn. Mar. 14, 2018), his opinion could have been helpful, given the dearth of medical opinions from treating sources.

sufficient basis to remand.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's] treating physician"); *Wilson v. Colvin*, 107 F.Supp.3d 387, 402 (2d Cir. 1982) (remanding where there was an obvious gap in the record); *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make all reasonable efforts to obtain treating physician's opinion).

In addition to not satisfying the duty to develop the record, a failure to make reasonable efforts to obtain these opinions is a *de facto* violation of the treating physician rule, requiring remand.  *Lacava v. Astrue*, No. 11–CV–7727 (WHP)(SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), ("[T]he 'treating physician rule' is inextricably linked to the duty to develop the record.  Proper application of the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination."), *report and recommendation adopted*, 2012 WL 6621722 (S.D.N.Y. Dec. 19, 2012); *Ubiles v. Astrue*, No. 11–CV–6340T(MAT), 2012 WL 2572772, at *9 (W.D.N.Y. Jul. 2, 2012) ("Lacking important information–namely, the function-by-function assessment from Dr. Laroche, the ALJ was unable to properly apply the treating physician rule and instead gave controlling weight to the consultative physician's opinion.  This was legal err.").  While an ALJ may reject the opinions of a treating physician, the ALJ must explain the basis for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

## II.    The ALJ RFC Finding Is Not Supported by Substantial Evidence

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's RFC finding is not supported by substantial evidence.  An ALJ's RFC determination must be supported by substantial evidence.  *Talavera*, 697 F.3d at 151.  "Substantial evidence is

more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and brackets omitted)).  Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021).

In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings.  20 C.F.R. § 404.1520(3).  Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted).  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118.  In any case, if there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

Here, the ALJ concluded that its RFC determination was "supported by the evidence as a whole." (Tr. 166.)  In regard to Plaintiff's mental impairments, the ALJ considered the GAF score provided by LCSW Bozeman and the opinion of Dr. Silver.  (Tr. 135–48, 589–610.)  As discussed above, the GAF score provided by LCSW Bozeman did not qualify as a medical opinion because, under the regulation applicable at the time, an LCSW did not qualify as an "acceptable medical source." *Mitchell*, 2015 WL 5306208, at *12.  Furthermore, that GAF score indicated a lower RFC than that reached by the ALJ.  In addition, Dr. Silver could not provide substantial evidence for the ALJ's RFC, because Dr. Silver did not personally examine Plaintiff. *Avila v. Comm'r of Soc. Sec. Admin.*, 20-CV-1360 (ER) (DF), 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021)

14

("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021); *Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) ("The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight."); *Green–Younger v. Barnhart*, 335 F.3d 99, 107–08 (2d Cir. 2003) ("Similarly, the reports of two SSA consulting physicians, who did not examine [plaintiff], are also not substantial evidence.").

In regard to Plaintiff's physical impairments, the ALJ considered the recommendation of Dr. Patton, and the opinions of NP Walcott and non-examining experts Drs. Solberg and Machado. (Tr. 165–66.)  As discussed, Dr. Patton's recommendation does not qualify as a medical opinion under C.F.R. § 404.1527(a)(1), and, in any case, would not support the RFC given it suggested that Plaintiff should take time-off work given her lower back pain.  (Tr. 509.)  NP Walcott was not an "acceptable medical source," her opinion was given limited weight by the ALJ, and her finding that Plaintiff could only sit for two hours and stand for one hour in an 8-hour workday and would have approximately 15% off-task time did not support the ALJ's RFC.  (*Id.*)

Like Dr. Silver's opinion, the opinions of Drs. Soberg and Machado could not provide substantial evidence for the ALJ's RFC determination as a matter of law because neither doctor personally examined Plaintiff.  *Avila*, 2021 WL 3774317, at *20; *Roman*, 2012 WL 4566128, at *16; *Green–Younger*, 335 F.3d at 107–08 (2d Cir. 2003).  In addition, the opinions of Drs. Solberg and Machado (and all of the other opinions of record, for that matter) cannot provide substantial evidence for the ALJ's RFC as a matter of law, because all of the opinions on record—with the exception of NP Walcott's—were stale at the time the ALJ rendered her opinion.

Courts will find an opinion stale if it is given prior to a deterioration in Plaintiff's condition. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp.3d 464, 470 (W.D.N.Y. 2018); *see also Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *3 (E.D.N.Y. Aug. 22, 2012). Drs. Solberg, Machado, Silver, and Patton, as well as the GAF scores cited by the ALJ, were provided on or prior to July 5, 2017. (Tr. 109–118 (Dr. Solberg provided opinion on April 18, 2017), 121–134 (Dr. Machado provided opinion July 5, 2017), 135–148 (Dr. Silver provided opinion on June 28, 2017), 499–532 (Dr. Patton provided opinion on January 5, 2017), 589–610 (GAF scores provided in May/June 2017).) All of these opinions pre-dated the April 2019 ALJ hearing by nearly two years. (Tr. 59.) During that period, Plaintiff had the spinal cord stimulator removed in November 2017, which was responsible for at least some pain reduction when all three non-examining experts rendered their opinions; had a lumbar laminectomy procedure in October 2018; and began frequent and consistent mental health treatment. (Tr. 164, 741–72.) Aside from NP Walcott, the opinions on record did not account for nearly two years of time when the medical records suggest a possible decline in Plaintiff's ability to function, and it was error for the ALJ not to consider or account for that. *Chambers v. Comm'r of Soc. Sec.*, No. 19-CV-2145 (RWL), 2020 WL 5628052, at *12 (S.D.N.Y. Sept. 21, 2020) (collecting cases) (citing, *inter alia*, *Camille v. Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015) ("[M]edical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding."), *aff'd*, 652 Fed. App'x 25 (2d Cir. 2016)).

In sum, because the opinions of NP Walcott and the GAF scores did not support the ALJ's RFC, and because the opinions of Drs. Silver, Solberg, and Machado cannot be considered substantial evidence for the ALJ's RFC, there was not substantial evidence to support the ALJ's RFC determination. *Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be

supported by a medical opinion in the record at that time."); *Avila*, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."); *Camille v. Colvin*, 104 F. Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 Fed. App'x 25 (2d Cir. 2016) ("[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." (internal quotations marks omitted)).

## III.   The ALJ's Insufficient Credibility Determination and Explanations

In addition to inadequately developing the record and reaching an RFC unsupported by substantial evidence, the Court observes that, upon remand, the ALJ should further explain her credibility determinations, including her reliance on evidence of daily functioning and lack of psychiatric hospitalization.  While the ALJ and Commissioner can consider a claimant's daily activities in assessing the intensity and persistence of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(i), "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Here, the ALJ notes several activities Plaintiff can allegedly perform, including preparing simple meals, leaving her residence without assistance, operating a motor vehicle, performing chores such as shopping, and browsing the internet.  (Tr. 165.)  For those findings, the ALJ cites Plaintiff "Function Report," which was dated June 14, 2017.  (Tr. 373.)  Insofar as the ALJ asked Plaintiff about these activities during the hearing, Plaintiff indicated that her ability to perform these activities was severely limited or nonexistent.  For example, Plaintiff said that she could not cook.  (Tr. 79.)  Plaintiff stated that she had not driven herself in two years or taken public transit in five years.  (Tr. 64.)  She stated that she did not go on the computer and did not use social media. (Tr. 79.)  The ALJ's failure to further examine Plaintiff's difficulty performing these tasks calls the ALJ's credibility assessment into question.  *Hankerson v. Harris*, 636 F.2d 893, 895–96 (2d

Cir.1980) ("[I]t was particularly important that the ALJ explore[] these symptoms with plaintiff so that the ALJ could effectively exercise his discretion to evaluate the credibility of the claimant to arrive at an independent judgment . . . regarding the true extent of the pain alleged." (internal quotation marks, brackets, and ellipsis omitted)).  Notably, between Plaintiff's "Function Report," and her testimony at the hearing before the ALJ, Plaintiff's condition deteriorated in all the ways that rendered most of the medical opinions of record stale, as discussed above.

In addition to Plaintiff's daily functions, the ALJ noted that Plaintiff "has no history of any psychiatric hospitalization and treatment records are not extensive."  (Tr. 165.)  Social Security Rulings state that "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints."  SSR 16-3p, 2017 WL 5180304 at *9.  This Ruling goes on to say "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  *Id.*  Here, the ALJ did not perform this two-step analysis and instead merely noted Plaintiff's purportedly non-extensive mental health treatment.  (Tr. 165.)  The ALJ failed to consider any possible effects that Plaintiff's move to New York had on her seeking further mental health treatment.  For example, when the ALJ inquired into the medication prescribed in May 2017, Plaintiff noted that she only took the medication for about three months and then moved to New York.  (Tr. 77.)

Thus, on remand, the ALJ should "include a specific credibility determination, explain how [she] balanced the various factors, [including Plaintiff's daily activities], and identify any inconsistencies between the plaintiff's testimony and the rest of the record."[11]  *Hodge*, 2020 WL

---

[11] The factors to be considered in assessing a claimant's credibility are:

7262846, at *4; *see also Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4–5 (E.D.N.Y. Aug. 16, 2021); *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.   The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 15, 2022
  Brooklyn, New York

---

(1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4 (E.D.N.Y. Aug. 16, 2021) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).