UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MADELINE DEL CARMEN VARGAS,

     Plaintiff,

   - against -

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4363 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Madeline Del Carmen Vargas ("Vargas") filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied her benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $116,362.00 in past-due Supplemental Security Income ("SSI") and Social Security Disability ("SSD") benefits. Plaintiff's counsel, Mark J. Keller ("Keller"), now moves for $40,807.39 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Keller's motion is granted in part and denied in part, and he is awarded $29,090.50.

**BACKGROUND**

After representing Plaintiff before the SSA, Keller filed this action on September 17, 2020, challenging the agency's denial of benefits. (Dkt. 1.) After the parties filed cross-motions for judgment on the pleadings, and Plaintiff filed a reply, (Dkts. 23, 24), the Court granted Plaintiff's motion and remanded to the SSA, (*see* Dkt. 28). This Court then awarded Plaintiff $10,238.02 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (04/06/2022 Dkt. Order.) On May 24, 2024, the SSA mailed Plaintiff a Notice of Award ("the SSI letter") informing her that she would receive approximately $46,867.55 in past-due SSI benefits,

1

with no withheld attorney fees specified.  (SSI Ltr., Dkt. 33-4.)  On April 27, 2025, the SSA mailed

Plaintiff a separate Notice of Award ("the SSD letter") granting past-due SSD benefits to Plaintiff,

with no total sum specified, but noting that 25% ($29,090.50) had been withheld as possible fees

for her attorney.  (SSD Ltr., Dkt. 33-5.[1])

By motion filed on May 2, 2025, Keller now seeks $40,807.39 for work performed before

this Court. (Fees Mot., Dkt. 33-1, ¶ 2.)  Keller seems to have arrived at this sum by adding

$11,716.89 (25% of $46,867.55, the total amount of past-due benefits indicated in the SSI letter)

to $29,090.50, the amount of attorney's fees indicated in the SSD letter.  (*See* Resp. to Fees Mot.,

Dkt. 36, at 2.)

Along with Keller's motion, counsel submitted a fee agreement, demonstrating that Vargas

retained Keller on a 25% contingency-fee basis, (Dkt. 33-6), and itemized time records, indicating

that he spent a total of 54.6 hours litigating this matter before this Court, (Dkt. 33-7).  A requested

sum of $40,807.39 for 54.6 hours of work equates to an effective hourly rate of $747.39 per hour.

The SSA filed a response on May 13, 2025, contesting Keller's calculation of his attorneys' fees.

(Dkt. 36.)

## DISCUSSION

### I.  Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing

period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932

F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice

of the benefits award," and the law presumes that "a party receives communications three days

---

[1] Neither letter clearly explains why the two letters were sent a year apart and awarded separate amounts.

after mailing." *Id.* at 87–89 & n.5.  Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

Plaintiff's counsel received the notices of benefits award on April 27 and 30, 2025.  (Fees Mot., Dkt. 33-1, ¶ 7.)  This motion was filed on May 2, 2025.  (Dkt. 33.)  The motion is thus timely filed.

**II.    Disputed Amount of Requested Fee**

There is a considerable discrepancy between the amount of fees Keller requests and the amount that the SSA deems appropriate.  Keller submits in his motion that 25% of Plaintiff's total past-due benefits is $40,403.95.  (Fees Mot., Dkt. 33-1, ¶ 10.)  The SSA contends that the $29,090.50 it withheld, as indicated in the second Notice of Award, constitutes 25% of Vargas' past-due SSI *and* SSD benefits[2], adjusted for windfall, and therefore, Keller's request of $40,807.39 exceeds the maximum amount to which he is entitled under 42 U.S.C. § 406(b).  (Resp. to Fees Mot., Dkt. 36, at 2.)[3]

The Court defers to the SSA to resolve any uncertainties relating to the 25% cap that counsel is entitled to request.  *See Daniel L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1225 (EAW), 2025 WL 1299251, at *1 (W.D.N.Y. May 6, 2025) (deferring to the SSA's calculation of the total amount of attorneys' fees withheld where Plaintiff received two notices of awards and only the latter stated the amount the Commissioner withheld for attorneys' fees); *cf. Hanlon v. Comm'r of*

---

[2] Based on this information, the Court infers that the total amount of benefits Vargas received between the two awards was $116,362.00, i.e., 4 x $29,090.50.

[3] The Court notes that neither Notice of Award clearly indicated that the $29,090.50 in attorneys' fees was withheld from claimant's combined SSI and SSD past-due benefits, only that it was withheld from "past-due benefits."  (*See generally* SSI Ltr., Dkt. 33-4; SSD Ltr., 33-5.)

*Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at \*1 n.1 (E.D.N.Y. Jan. 11, 2022) (relying on "the SSA, in its role as trustee for claimant in this § 406(b) proceeding," to confirm the amount withheld as attorneys' fees).[4] The Court therefore finds that $29,090.50 is the statutory maximum that Plaintiff's counsel is entitled to request and proceeds to test this fee for reasonableness.

### III.    Reasonableness of the Requested Fee

#### A.    Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b)(1)(A).  If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the fee for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).  To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[5] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 853.

---

[4] The Court also notes that Keller presumably can confirm with Plaintiff how much money she received from the SSA as past-due benefits from the two awards.

[5] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake.  Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery.").  "If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002).

With respect to whether a fee would be a "windfall," in *Fields*, the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," (3) "the satisfaction of the disabled claimant," and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53 (citations omitted).

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht*, 535 U.S. at 796; *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)) (same).

**B.    Application**

5

Here, Plaintiff retained Keller pursuant to a 25% contingency-fee agreement. (Retainer Agreement, Dkt. 33-6.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Keller seeks the full 25% of Plaintiff's combined past-due SSI and SSD benefits, which the Court has determined to be $29,090.50. At 54.6 hours of work, that would be an effective hourly rate of $532.79 per hour. For the reasons explained below, the court finds that the amount Keller requests to be reasonable in the context of this case.

To determine reasonableness, the Court considers "the character of the representation and the results the representative achieved." *Fields*, 24 F.4th at 849. The Court notes that Keller's briefing was professional, identified the relevant infirmities on which the Court ultimately remanded, (*See* Pl.'s Mem. in Supp. of Mot. for Judgment on the Pleadings, Dkt. 24-3, at 34–38 (challenging Administrative Law Judge's ("ALJ") Residual Functional Capacity determination as unsupported by substantial evidence and ALJ's substitution of her medical knowledge for that of a physician); *see also* 02/15/2022 M&O, Dkt. 28 at 9 (granting motion in part based on these arguments)), and obtained the benefits Plaintiff sought— an award of past and future benefits, (*see* Dkts. 33-4, 33-5). For those reasons, the Court finds that consideration does not warrant a downward adjustment.

Second, the Court must determine whether counsel was responsible for unreasonable delays. *Fields*, 24 F.4th at 849. The Court notes that, on June 14, 2021, counsel requested an extension to file the opening brief. (Dkt. 16.) However, that request delayed briefing only until July 5, 2021, and counsel cited the long administrative transcript and Plaintiff's extensive medical records as reasons behind the delay. Any other delays were caused by the SSA, (*see* Dkt. 19 (SSA requesting extension of time to file response)), and Keller promptly filed a reply brief, (Dkt. 26). The Court thus finds that this factor does not justify a downward adjustment. *See, e.g.*, *Gray v.*

*Comm'r of Soc. Sec.,* No. 20-CV-3916 (PKC), 2023 WL 3948796, at *3  (E.D.N.Y. June 12, 2023) (finding that "a single request of a reasonable length," such as "one thirty-day extension," does not constitute an "undue delay"); *Sestito v. Comm'r of Soc. Sec.*, No. 20-CV-3538 (PKC), 2022 WL 14760733, at *3 (E.D.N.Y. Oct. 25, 2022) (same).

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall.

With respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court notes that 54.6 hours is on the higher end of what is typically required for these relatively straightforward cases.  However, under *Fields*, the Court does not find that this factor alone warrants a downward adjustment.  In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98.  *Id.* at 854.  Here, Keller performed significantly more work, facing an Administrative Transcript of 968 pages, (Dkt. 14), drafting an opening brief of 40 pages, (Dkt. 24), and drafting a reply brief, (Dkt. 26).  Accordingly, the amount of time Keller spent on Plaintiff's case is appropriate.  *See, e.g. Miller v. Comm'r of Soc. Sec.*, No. 20-CV-5214 (PKC), 2023 WL 5002789, at *3 (E.D.N.Y. Aug. 4, 2023) (finding that 56.7 hours of work was reasonable for a transcript of 541 pages, an opening brief of 25 pages, and a stipulation of remand); *Schultz v. Comm'r of Soc. Sec.*, No. 18-CV-5919 (PKC), 2022 WL 2918237, at *3 (E.D.N.Y. July 25, 2022) (finding that, although 40.1 hours was "on the higher end," counsel was "required to do

more work" than counsel in *Fields*).  Thus, the Court finds that this factor alone does not warrant a downward adjustment.

With respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *Fields*, 24 F.4th at 855, the Court notes that Keller represented Plaintiff in front of the SSA before filing this suit.  In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including at four separate hearings before ALJs and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall.  *See id.* at 855.  Here, Keller represented Plaintiff before the agency starting on November 21, 2018, until the case's termination, including two hearings before the presiding ALJ, and a petition to the SSA Appeals Council.  (*See* Dkt. 14, at ECF[6] 14, 65, 273; Dkt. 33-3, at 1.)  Keller spent time reviewing the administrative record and extensive medical records, and drafted Plaintiff's motion for judgment on the pleadings, resulting in a significant six-figure award for Plaintiff.  (*See* Dkt. 33-7; *see supra* note 2 (calculating total benefits award as $116, 362.00).)  Therefore, the Court finds that no downward adjustment is justified regarding this factor.  *See, e.g. Miller*, 2023 WL 5002789, at *4 (finding that "two administrative hearings in addition to the present action" did not warrant downward adjustment under *Fields*).

With respect to "the satisfaction of the disabled claimant," the Court presumes that Vargas is satisfied with the results, with no evidence to the contrary.  *Gray*, 2023 WL 3948796, at *3.  Plaintiff received the past-due benefits she sought, and Plaintiff's counsel only caused a brief delay

---

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

of three weeks in proceedings.  Delays of this length are below what the Court believes could reasonably warrant the claimant's dissatisfaction.  *See, e.g., id.* (finding that "one relatively brief delay" of thirty days does not justify a downward adjustment on the third "windfall" factor); *Sestito*, 2022 WL 14760733, at \*4 (same); *Schultz*, 2022 WL 2918237, at \*3–4 (finding dissatisfaction where counsel was responsible for delays spanning "several months," which "caused further hardship" to A claimant).  This factor accordingly does not justify a downward adjustment.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that it was readily discernible from the ALJ's decision in this case that the ALJ failed to develop the record and that remand was therefore necessary.  (*See* Dkt. 28, at 9–11.)  However, "because the SSA initially denied the claim, and remand was not stipulated to, no result was presumed nor guaranteed."  *See Gibson v. Saul*, No. 21-CV-41 (PKC), 2024 WL 4802618, at \*4 (E.D.N.Y. Nov. 15, 2024); *Tastan v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-1831 (NRM) (ARL), 2025 WL 1640539, at \*4 (E.D.N.Y. Feb. 20, 2025) (same).  The Court finds that this factor does not justify a downward adjustment in the context of this case.

For the reasons explained above, the Court finds that Keller is entitled to a fee of $29,090.50, which represents 25% of the past-due benefits awarded to Plaintiff.  Additionally, upon receiving the § 406(b) award, Keller must remit the $10,238.02 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Mark J. Keller is awarded $29,090.50.  Upon

receipt of this award from the government, Keller shall promptly refund Plaintiff $10,238.02, which represents the EAJA fees already received by counsel.  The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 2, 2026
      Brooklyn, New York